AF Approval __NA__                    Chief Approval __MPF__

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                    CASE NO. 6:22-cr-148-PGB-LHP

LOUISAINT JOLTEUS

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, LOUISAINT JOLTEUS, and the attorney for the defendant, William A. Santana, Esq., mutually agree as follows:

**A.**    **Particularized Terms**

    1.    Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d).

    2.    Maximum Penalties

Count One is punishable by a maximum term of imprisonment of 20 years; a fine of not more than $250,000; a term of supervised release of not more than 3 years, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses,

Defendant's Initials __LJ__

the Court may order the defendant to make restitution to any victim of the offense(s),

or to the community, as set forth below.

    3.    <u>Elements of the Offense</u>

        The defendant acknowledges understanding the nature and elements of

the offense with which defendant has been charged and to which defendant is

pleading guilty.  The elements of Count One are:

| | |
|---|---|
| <u>First</u>: | Two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity; |
| <u>Second</u>: | The unlawful plan affected interstate commerce; |
| <u>Third</u>: | The defendant knowingly and willfully joined in the conspiracy; and |
| <u>Fourth</u>: | When the defendant joined in the agreement, the defendant had the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity. |

    4.    <u>No Further Charges</u>

        If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this agreement.

Defendant's Initials ___J___        2

5.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the United States Treasury, identity theft victims, and Certified Public Accounting or tax preparation firms that were unlawfully breached during the course of the conspiracy charged in Count One.

6.      Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The

Defendant's Initials _____                3

defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 1963, whether in the possession or control of the United States, the defendant or defendant's nominees.

Defendant's Initials _L̲J̲_                    4

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful

Defendant's Initials ⎣⎦     5

means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials _LJ_                6

responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

9.    Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the

Defendant's Initials _____        7

defendant's automatic removal from the United States following completion of the defendant's sentence.

**B.    Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is

Defendant's Initials _____        8

due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

    2.    <u>Supervised Release</u>

        The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

        The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    4.    <u>Sentencing Information</u>

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate

Defendant's Initials _____        9

regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant

Defendant's Initials _____       10

expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials ⟨_⟩          12

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _LJ___                    14

13.  Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _25th_ day of July, 2023.

ROGER B. HANDBERG
United States Attorney

_____
LOUISAINT JOLTEUS
Defendant

For _____
Dana E. Hill
Assistant United States Attorney

_____
William A. Santana, Esq.
Attorney for Defendant

_____
Matthew J. Del Mastro
Special Assistant U.S. Attorney

_____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

Defendant's Initials _LJ_          15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                            CASE NO. 6:22-cr-148-PGB-LHP

LOUISAINT JOLTEUS

## PERSONALIZATION OF ELEMENTS

As to Count One:

First:    Between on or about December 21, 2015, and March 19, 2019, did two or more people agree to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity?

Second:    Did the unlawful plan affected interstate commerce?

Third:    Did you knowingly and willfully join in the conspiracy?

Fourth:    When you joined in the agreement, did you have the specific intent to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity?

Defendant's Initials _L̸J_        16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                       CASE NO. 6:22-cr-148-PGB-LHP

LOUISAINT JOLTEUS

## FACTUAL BASIS

On or about January 12, 2017, the server of an accounting firm in Orlando,

Florida, identified in the Indictment as Business-11, was breached, and the

personally identifiable information (PII) of Business-11's clients was thereafter stolen

from the server and then used to file false tax refunds with the IRS.  The FBI

initiated an investigation and identified a corrupt enterprise operating in the Middle

District of Florida and nationwide to obtain PII for the purpose of committing wire

fraud and mail fraud by submitting false tax refunds and retrieving the proceeds of

this offense.  The FBI determined that, from at least December 21, 2015, through at

least March 19, 2019, Defendant LOUISAINT JOLTEUS, as well as coconspirators

ANDI JUNIOR JACQUES, DICKENSON ELAN, MICHAEL JEAN POIX,

MONIKA SHAUNTEL JENKINS, VLADIMYR CHERELUS, JEFF PROPHT-

FRANCISQUE, ALAIN JEAN-LOUIS, deceased conspirator "Rich4ever4430,"

and others were part of that unlawful and corrupt enterprise involving the submission

of false and fraudulent tax refunds based on stolen PII ("Enterprise").  The FBI's

Defendant's Initials ⟳            17

investigation revealed the following true facts about this Enterprise and JOLTEUS's involvement in this Enterprise:

### *JOLTEUS's Role*

In the course of this Enterprise, Defendant JOLTEUS was a resident of Florida. Members of the Enterprise accessed a dark web market that sold illegally obtained credentials of compromised computer servers ("Marketplace"). They would use the Marketplace to purchase credentials of compromised computer servers to steal PII of taxpayers that the conspirators would later use to file false and fraudulent tax returns. Members of the Enterprise used the Marketplace to steal Electronic Filing Identification Numbers ("EFINS") – credentials used by tax preparers to file tax returns – so that they could file fraudulent and false tax returns using the stolen PII ("Stolen EFIN-Filed Returns").

Members of the Enterprise would also create new businesses purporting to be legitimate tax preparation firms and obtain real EFINs on behalf of these sham businesses that were then used to file fraudulent and false tax returns using the stolen PII ("Sham EFIN-Filed Returns"). JOLTEUS and his coconspirators also created other sham businesses, which they used to open bank accounts where they received and withdrew fraudulent tax preparer fees they received for the false tax returns. Members of the Enterprise also used stolen PII to file false and fraudulent tax returns as though they were submitted by taxpayers independently, not through a CPA or

Defendant's Initials _W_ 　　　18

accounting firm ("Self-Prepared Returns"). Members of the Enterprise additionally used compromised computer servers to access and modify financial accounts used to receive the tax refunds obtained from the IRS when the fraudulently submitted returns were accepted. JOLTEUS and his coconspirators withdrew fraud proceeds from bank accounts created to receive the fraudulently obtained tax refunds and tax preparer fees as a result of the fraudulent and corrupt Enterprise.

JOLTEUS worked directly with JACQUES, ELAN, and JEAN POIX in furtherance of this unlawful Enterprise. JOLTEUS worked indirectly and through other coconspirators with "Rich4ever4430" in this same corrupt Enterprise.

Each false tax return filed in the course of this corrupt Enterprise was filed with the intent to defraud as part of a scheme to defraud by using false or fraudulent pretenses or representations about material facts and through the use of communications transmitted via wires in interstate commerce.

### *Edvert Tax Prep (Edvert)*

On or about December 10, 2015, JOLTEUS's coconspirators registered Edvert Tax Prep (Edvert) as a fictitious business in Florida. The purpose of creating Edvert was to create a sham tax preparation firm and use this fake business to obtain EFINs and file false tax refunds in support of the unlawful Enterprise. Edvert was registered with the name of Person-1 as a point of contact. Person-1 was not involved in the operation of Edvert or aware of its unlawful operations.

Defendant's Initials __C J__          19

On or about December 27, 2015, JOLTEUS paid $50 for a PTIN in the name of Person-1, using a debit card linked to a Bank of America bank account he had opened named "Louisaint Jolteus Sole Prop dba Secure Titles and Closing." JOLTEUS had registered Secure Titles and Closing as a fictitious business in Florida on or about September 27, 2015, and had opened multiple Bank of America bank accounts under that name.

JACQUES and ELAN obtained at least eight EFINs from the IRS for Edvert. On or about December 28, 2105, JACQUES registered eight Edvert EFINs with Sigma Tax to obtain Drake tax preparation software and refund transfer bank products, including debit cards and check stock. JACQUES provided Sigma Tax and Drake bank account information for JOLTEUS's Secure Titles and Closing bank account as the deposit location for tax preparer fees.

On January 20, 2016, JOLTEUS's coconspirators—including JACQUES and ELAN—began to file fraudulent tax returns using the PII of Victim Firm-17, a CPA firm in Arizona. "Rich4ever4430" had an image in his encrypted cloud storage account showing live, real-time access to the server from Victim Firm-17, including access to PII of clients of Victim Firm-17 and a PTIN associated with Victim Firm-17. From January 20 through February 24, 2016, members of the Enterprise filed approximately 115 returns through Edvert using PII from Victim Firm-17.

Defendant's Initials _____     20

On January 19, 2016, ELAN sent JACQUES an email with one of the EFINs obtained for Edvert and the passwords for tax preparation software obtained for Edvert. On that same day, member of the Enterprise began using that Edvert EFIN to file returns with stolen PII. Over the next six weeks, that specific Edvert EFIN filed 162 false returns (claiming more than $1 million) using bulk PII from various entities. On or about February 15, 2016, "Rich4ever4430" purchased the credentials from the compromised sever of Victim Firm-16 from the Marketplace. From February 16 through March 22, 2016, members of the Enterprise used four of Edvert's EFINs to file approximately 382 returns using the PII of Victim Firm-16's clients, claiming approximately $1.74 million in refunds.

Tax preparer fees for false taxes filed by the Enterprise through Edvert were deposited in the Bank of America bank accounts JOLTEUS had established under the name of Secure Titles and Closing. JOLTEUS withdrew most of these funds via cash withdrawals and transferred the rest between his Secure Titles and Closing bank accounts. In total, JOLTEUS collected approximately $40,000 in preparer fees on behalf of Edvert in 2016. JOLTEUS and his coconspirators also used one of his Secure Titles and Closing bank accounts to pay for the Drake software that was used by the Enterprise to file false tax returns through Edvert.

Altogether, between on or about January 19, 2016, and on or about April 29, 2016, JOLTEUS and other members of the Enterprise filed, caused to be filed, and

Defendant's Initials _____          21

aided and abetted the filing of approximately 1,046 false tax returns using stolen PII through Edvert, claiming more than $5.1 million in tax refunds.

### FSL Multiservices LLC (FSL), Morton Fast Refund (MFR), and SC Accounting and Tax Services (SCA)

JOLTEUS's coconspirators registered FSL Multiservices LLC (FSL) and Morton Fast Refund (MFR) as businesses with the State of Florida in or about December 2016 and January 2017 respectively.  The purpose of creating these entities was to create sham tax preparation firms and use these fake businesses to obtain EFINs and file false tax refunds in support of the unlawful Enterprise.

Between or about October 2016 and January 2017, JOLTEUS's coconspirators obtained multiple EFINs for FSL and MFR.  In or about March 2017, the coconspirators also obtained multiple EFINs for an additional sham tax preparation business they created, named SC Accounting and Tax Services (SCA). JOLTEUS's coconspirators used these EFINs to apply with Sigma Tax for tax preparation software and refund transfer bank products that they subsequently used to file false tax returns and obtain the refunds.  In the Sigma Tax applications for FSL and SCA, the coconspirators provided bank account information for a Bank of America bank account JOLTEUS had established under the name LSJFR Multiservices LLC.  This was the bank account where their tax preparer fees were to be deposited.  JOLTEUS had established LSJFR Multiservices LLC as a limited

Defendant's Initials _LJ_          22

liability company on January 11, 2017, and he opened the associated bank account six days later.

Beginning on or about February 4, 2017, through March 7, 2017, members of the Enterprise used PII stolen from various tax preparation and CPA firms to file false returns through FSL, using a PTIN in J.B.'s name. "Rich4ever4430" had obtained J.B.'s PII through a computer server breach of Victim Firm-18, a CPA firm in Orlando. Similarly, members of the Enterprise used PII stolen from various tax preparation and CPA firms by "Rich4ever4430" and other coconspirators to file false tax returns through MFR, and SCA.

Tax preparer fees for the false tax returns filed by the Enterprise through FSL and SCA were deposited in the Bank of America bank account JOLTEUS had established under the name of LSJFR Multiservices LLC. JOLTEUS withdrew most of these funds via cash withdrawals. Bank surveillance photographs show JOLTEUS making many of these withdrawals. In 2017, JOLTEUS collected approximately $57,000 in preparer fees on behalf of FSL, and approximately $23,750 in preparer fees on behalf of SCA.

Although the coconspirators registered a different bank account for MFR with Sigma Tax and Drake, they subsequently redirected preparer fees to a different bank account that JOLTEUS had established at SunTrust in the name of LSJFR Multiservices. JOLTEUS withdrew most of these funds via cash withdrawals from

Defendant's Initials ⎣⎦            23

his SunTrust account.  During one of these withdrawals in 2017, JOLTEUS had a conversation with the bank teller in which he said that he had a tax preparation business where he was personally meeting with clients and filing their personal income tax returns.  JOLTEUS explained that his client's refunds were being deposited into his account, and that he need to pay them back.  In 2017, JOLTEUS collected approximately $71,850 in preparer fees on behalf of MFR.

In total, from on or about January 23, 2017, through on or about March 8, 2017, JOLTEUS and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of, approximately 661 false tax returns using stolen PII through FSL, claiming more than $3 million in tax refunds.  From on or about January 26, 2017, through on or about March 8, 2017, JOLTEUS and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of approximately 828 tax returns through MFR, claiming more than $4.5 million in tax refunds.  From on about March 22, 2017, through on or about April 9, 2017, JOLTEUS and other members of the Enterprise filed, caused to be filed, and aided and abetted the filing of, approximately 303 tax returns through SCA, claiming more than $1.5 million in tax refunds.

### *Victims and Losses Attributable to Corrupt Enterprise*

In the course of this corrupt Enterprise, the participants filed 9,214 tax returns using fraudulently stolen PII and EFINs, claiming a total amount of refunds of more

Defendant's Initials ⌐⌐⌐       24

than $45 million.  The IRS accepted many of these returns, paying an estimated total of more than $6 million in fraudulent refunds.  The following reflects an estimation of the total amounts claimed on fraudulent tax returns using stolen EFINs, stolen PII, and EFINs associated with firms like FSL that were created by the members of the Enterprise to advance the fraudulent aims of the Enterprise.

| Entity Whose EFIN was Used | Fraudulent Tax Returns Submitted | Amounts Fraudulently Claimed |
|---|---|---|
| Morton Fast Refund (MFR) | 828 | $4,532,354 |
| SC Accounting and Tax Services (SCA) | 303 | $1,558,327 |
| Chantol Multiservices (CMS) | 441 | $2,223,395 |
| Yvelene Tax Services (YTS) | 455 | $2,476,789 |
| FSL Multiservices (FSL) | 664 | $3,099,291 |
| Edvert Tax Prep (EDV) | 1046 | $5,140,673 |
| AAJR Multiservices (AAJR) | 1853 | $6,767,992 |
| Deedee Multiservices (DMS) | 605 | $1,728,728 |
| RP Tax | 67 | $277,827 |
| Victim Firm-1 | 331 | $1,464,738 |
| Victim Firm-2 | 57 | $294,887 |
| Victim Firm-3 | 109 | $551,234 |
| Victim Firm-4 | 175 | $1,145,257 |
| Victim Firm-5 | 214 | $1,577,384 |
| Victim Firm-6 | 219 | $1,143,764 |
| Victim Firm-7 | 147 | $452,150 |
| Victim Firm-8 | 296 | $2,099,859 |
| Victim Firm-9 | 158 | $1,035,240 |
| Victim Firm-10 | 277 | $1,454,602 |
| Self-prepared | 969 | $6,409,684 |
| **TOTALS** | **9,214** | **$45,434,175** |

Based on the evidence and investigation, the Government and the Defendant agree that the readily provable estimation of losses attributable to the Defendant's

Defendant's Initials           25

participation includes the tax refunds fraudulently submitted through Edvert, FSL, MFR, and SCA.

In all of this conduct, two or more people agreed to try to accomplish an unlawful plan to participate in the affairs of an enterprise through a pattern of racketeering activity, this unlawful plan affected interstate commerce, JOLTEUS knowingly and willfully joined in the conspiracy, and, when JOLTEUS joined in the agreement, JOLTEUS had the specific intent either to personally participate in committing at least two other acts of racketeering, or else to participate in the enterprise's affairs, knowing that other members of the conspiracy would commit at least two other acts of racketeering and intending to help them as part of a pattern of racketeering activity.